Kenneth SAVAGE and Rhoda Savage

v.

Lawrence A. RENAUD, Jr., et al.

Supreme Judicial Court of Maine.

Argued Jan. 29, 1991.
Decided March 18, 1991.

Ervin D. Snyder (orally), Wiscasset, for plaintiffs.

James F. Day (orally), Bath, for defendants.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

The plaintiffs, Kenneth Savage and Rhoda Savage, appeal from the judgment entered by the Superior Court (Sagadahoc County, *Brodrick, J.*) for the defendants, Lawrence A. Renaud, Jr., William V. Andersen, Beverley A. Andersen, Edward E. Green, and Carol M. Green, on the Savages' claim for damages and injunctive relief for the defendants' alleged trespass, and on the defendants' counterclaim for a declaratory judgment that they have a right of way over an access road to their property. The Savages challenge the court's adoption of the report of the referee that they failed to establish title to land on which one of the defendants, Lawrence A. Renaud, Jr., had constructed the road, and in the alternative, that the Savages were equitably estopped by their representations and conduct from asserting a claim to the disputed land. The Savages also challenge the referee's failure to render a decision on their motion *in limine* seeking a determination of the priority of deeds to the contested property based on their recording dates. We affirm the judgment.

In November 1988, the Savages filed the current action for damages and injunctive relief for trespass by the defendants' construction of and continued use of an access road alleged to cross Lot 3, the most easterly of the three lots owned by the Savages. In their answer to the complaint the defendants alleged the affirmative defenses of estoppel and laches and a counterclaim seeking a declaratory judgment, pursuant to 14 M.R.S.A. § 5951 (1980 & Supp. 1990), that the access road had been constructed on a portion of Lots 4 and 5[1] to the east of the Savages' property over which the defendants had a right of way or, in the alternative, that the Savages were equitably estopped by their representations and conduct from bringing this action to prevent the defendants continued use of the access road.

After the parties agreed to refer the case to a referee, the Savages filed a motion *in limine*, seeking to resolve in advance of the trial the priority of their recorded deed to Lot 3 over the deeds to Lots 4 and 5. After a hearing on the merits and without reference to the motion *in limine*, the referee issued his report, finding for the defendants on the Savages' claim for trespass and for the defendants on their counterclaim. The court adopted the referee's report over the Savages' timely objections, and the Savages appeal from that judgment.[2]

The Savages contend that the record discloses insufficient evidence to support the referee's determinations that the monuments existing at the northeast and southeast corners of Lot 3 mark the

1. The owners of Lot 4 and of Lot 5 were not named as parties either in the Savage complaint or the defendants' counterclaim, and accordingly are not bound by the judgment in this case.

2. The defendants argue on appeal that the Savages failed to file a timely objection to the referee's report pursuant to M.R.Civ.P. 53(e)(2). Our review of the record satisfies us that the Savages' objections have been properly preserved for this appeal. Under Rule 53, a party who fails to object to the referee's report within 10 days "after being served with notice of the filing of the report" waives appellate review of the findings contained in that report. The Savages concede that they did not file objections prior to the entry of a first judgment adopting the referee's report. Although the time constraints for the filing of objections are stringent, the court properly determined, as contended by the Savages, that no notice of the filing of the referee's report with the court was entered on the docket sheet or mailed to the Savages by the clerk, as provided by M.R.Civ.P. 53(e)(1), and the court set aside the first judgment on that ground. One day after the trial court set aside the first judgment the Savages filed their objections to the referee's report.

endpoints of the eastern boundary of that lot and that the access road had not been constructed on their land. This court will review findings of fact rendered by a referee for clear error and will affirm those findings if supported by any competent evidence in the record. *See Boothbay Harbor Condominiums, Inc. v. Department of Transp.*, 382 A.2d 848 (Me.1978). The rule is well established that "what boundaries are, as ascertained from the language of a deed, is a question of law; where they are on the face of the earth is a question of fact." *See Proctor v. Hinkley*, 462 A.2d 465, 469 (Me.1983). When an alleged inconsistency arises between existing artificial monuments and the measurements described in a deed, monuments whose position can be located on the ground will constitute the boundaries. *Id.* at 471; *Conary v. Perkins*, 464 A.2d 972, 975 (Me.1983).

The Savages own Lots 1, 2 and 3, all bordering the south side of a highway in West Bath. The defendants own lots to the south and southeast of the Savage property and gain access to their property from the highway by way of an access road that is the subject of the present litigation.[3] In early 1984, prior to his planned purchase of land then owned by his father to the south of the Savage property, the defendant, Lawrence Renaud, decided to construct an access road from the highway to his father's land along a fifteen-foot wide right of way bordering the eastern boundary of the Savages' Lot 3. After consulting relevant deeds and tax maps, Renaud drew rough sketches of that eastern boundary. As a result of a search of the general area with Arthur Laskey, the then owner of Lot 5 to the east of the Savages' Lot 3, pins were located at several points along the southern line of the Savages' land. A metal pin discovered at the southeast corner of Lot 3, which would be the southwest corner of Lot 5, was rusted and appeared to be several years old.

Renaud met Kenneth Savage at the northeast corner of Lot 3 and told Savage of his plans to construct an access road along its eastern boundary. Although neither party could locate the original pin described in the deed at the northeast corner of Lot 3, Savage pointed to its approximate location and Renaud marked it with a replacement stake. They verified the placement of the stake by measuring the combined frontage measurements described in the deeds to the three Savage lots and to Lot 4, which also bordered on the highway and is immediately to the east of the Savages' Lot 3. They walked south from the northeast corner of Lot 3 to the metal pin previously located by Renaud and Laskey at the southeast corner of Lot 3. When Savage told Renaud that he could not be certain that this pin was the original monument described in his deed, Renaud suggested that they measure to the west 130 feet, the distance described in the deed for the southern boundary of Lot 3, to verify if another pin could be located at the southwest corner of that lot. When they found a pin at the designated location, Savage informed Renaud there was a "good chance" that the two latter pins marked the ends of the southern boundary of Lot 3. They continued around the perimeter of the other two Savage lots, locating several other pins described in the deeds. Savage told Renaud that he would have no problem with the access road if Renaud constructed it to the east of the line extending between the monuments they had located at the northeast and southeast corners of Lot 3. One week later, the parties met again to recheck all the monuments and measurements, and Renaud marked off the eastern boundary of Lot 3. In the spring of 1984, Renaud hired a contractor who constructed the fifteen-foot wide road at the designated location east of this line. The Savages were fully aware of the siting and construction of the road but did not discuss it further with Renaud. Shortly after the road was completed, Renaud purchased the land located to the south of the Savage property from his father and built a residence.

---

**3.** In 1985 and 1987, the Andersens purchased portions of the lot owned by Renaud adjacent to the southern boundary of the Savage lots. In 1986, the Greens purchased the lot located southeast of the Savage property.

In the present case, the deed to the Savages of Lot 3 describes both pins and distances, and the referee properly used extrinsic evidence to determine if these original pins could be located on the ground. *See Proctor v. Hinkley,* 462 A.2d at 471. Although extrinsic evidence is generally used to locate *original* monuments, evidence that the parties have agreed that a replacement monument was located at or near the site of the original stake will support a factual determination that the replacement marker is the terminus of a boundary described in the deed. *See id.* at 471; *see also Theriault v. Murray,* 588 A.2d 720 (Me.1991) (physical disappearance of monument does not terminate its use in defining boundary if its former location can be ascertained).

The record discloses ample evidence that a metal pin did exist at the southeast corner of Lot 3 as early as 1984 and that its physical condition was consistent with the defendants' contention that it was the original pin referred to in the deed to the Savages of Lot 3. The defendants concede that the stake at the northeast corner of Lot 3 is not the original monument, but correctly characterize the stake as a valid replacement marker placed at that location by Renaud after consultation with and the consent of Kenneth Savage. The referee was entitled to conclude, as a matter of law, that the eastern boundary of Lot 3 could be located by reference to the existing pins located on the ground. Based on this legal conclusion, the record discloses ample evidence for the referee's subsequent finding of fact that the pins were located at the western edge of the access road. Because the Savages did not hold title to the land on which the access road was constructed, we need not address the referee's alternative finding that the Savages were estopped from asserting a trespass claim because the defendants to their detriment had reasonably relied on representations of Kenneth Savage regarding the easterly boundary of Lot 3 and on the silence of the Savages during the later construction of the access road.

The Savages next contend that the referee erred in his failure to rule on their motion *in limine,* which sought to establish the priority of the recorded deed to the Savages of Lot 3 over the deeds to Lots 4 and 5 through which Renaud claimed a right of way. The Savages hired a surveyor, Robert Spivey, to ascertain the true eastern boundary of Lot 3. The Savages expressed serious doubts that the metal pin previously located at the southeast corner of Lot 3 in 1984 was the original monument described in their deed to that lot. Disregarding the disputed pin, Spivey plotted the boundaries of the three Savage lots using monuments described in prior independent surveys of neighboring properties. Spivey concluded that the eastern boundary of Lot 3 ran from the stake placed by Renaud at the northeast corner to a point east of the metal pin located at the southeast corner of Lot 3 in 1984. The Savages rely on the conclusion reached by Spivey for their claim as to the eastern boundary of Lot 3.

Having determined that the referee properly found the location of the easterly boundary of Lot 3, we cannot agree with the Savages' contention that the issue of the priority of the deeds as between Savage and the predecessor in interest to the present owners of Lots 4 and 5 is relevant to the referee's ultimate resolution of the case. On the facts of this case, neither the Savages' complaint for trespass nor the defendants' counterclaim for a declaratory judgment depend on such a factual finding. Spivey conceded at the trial that his plan was not conducted under accepted professional survey standards. The referee implicitly determined in his report that the plan submitted by Spivey, on which the Savages' motion *in limine* premised their claim of the eastern boundary of Lot 3, was not credible and rejected it. The reliability of evidence provided by a surveyor is a question for the fact finder and will be reviewed only for clear error. *See Edmonds v. Becker,* 434 A.2d 1012, 1014 (Me. 1981). We find no clear error in the referee's finding.

The entry is:

Judgment affirmed.

All concurring.