**Edward S. PAINE et al.**

v.

**John SPOTTISWOODE et al.**

Supreme Judicial Court of Maine.

Argued Jan. 21, 1992.
Decided Aug. 5, 1992.

actor. 17–A M.R.S.A. § 251(1)(E) (Supp.1991) *as amended by* P.L.1991, ch. 457 (effective Oct. 9, 1991).

Kenneth R. Clegg (orally), Bourque, Clegg & Kugler, Sanford, for plaintiffs.

John G. Connor (orally), Friedman & Babcock, Portland, for defendants.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Defendants John Spottiswoode and Downeast Construction and Development Corporation appeal from a judgment entered in the Superior Court (York County, *Fritzche, J.*) that accepted a referee's recommendation finding Spottiswoode liable for numerous defects in the construction of a house owned by plaintiffs Edward and Joyce Paine. Spottiswoode is the owner of Downeast Construction and they were the general contractors on the construction project. On appeal Spottiswoode contends that the referee 1) improperly increased the scope of his obligations to the owner; 2) made damage awards for which there was no evidentiary support; 3) improperly applied the cost of repairs as the measure of damages; and 4) erred in applying joint liability because there was no joint action among defendants. The Paines cross-appeal, arguing that the designer, Barbara Converse, should be held jointly liable for all the damages assessed against the engineer, Donald Thompson. We affirm the judgment.

In 1979 the Paines hired Converse to design their "dream home" in Cape Ned-

dick, unaware that she was not a licensed architect. Converse in turn hired Joseph DiDonato, an employee of Design International, to prepare the engineering and structural plans. Neither Donald Thompson, the owner of Design International, nor DiDonato were licensed engineers. Converse knew DiDonato was not an engineer, but testified she thought someone at Design International was licensed.

After the structural plans were complete, and while they were negotiating a contract with Spottiswoode, the Paines had DiDonato redesign the roof framing system to accommodate their plans for solar heating panels. Once the roof was redesigned, Spottiswoode and the Paines entered into a cost plus contract with a $400,000 ceiling. Spottiswoode was unaware that neither a licensed architect nor a licensed engineer ever reviewed the plans and specifications for the house despite the fact that it was a large house with many unconventional features.

The house was subsequently built at a total cost of $550,000, and in August 1981 the Paines moved into the house. From that time on, the Paines were presented with myriad problems, the most significant of which was that the house leaked and could not be heated to a satisfactory temperature. The average monthly heating bill during the winter of 1981–82 was $1,000. In addition, the Paines burned approximately seven cords of wood during that winter. The Paines testified that despite their best efforts some of the rooms could not be heated above the low 60's. Because the Paines found the house uninhabitable, they moved out after living in it for less than two years. The house was put on the market and sold approximately three years later for $315,000.

The Paines filed a complaint against three groups of defendants: the designer, Barbara Converse; the engineers, Joseph DiDonato and Donald Thompson d/b/a Design International; and the general contractor, John Spottiswoode and Downeast

* McKusick, C.J., sat at oral argument and participated in the initial conference but retired before    this opinion was adopted.

Construction and Development Corporation.[1] The complaint alleged breach of express and implied warranties, as well as negligence in the design and construction of the house. The parties agreed to refer the case to a referee. Over the course of eight days of hearings, both the Paines' and Spottiswoode's engineering and construction experts testified concerning the cause of the defects and the cost of repairs. Thirteen months later the referee filed a report finding that Spottiswoode in a number of respects failed to carry out his duty in constructing the home and reciting testimony that demonstrated instance after instance when Spottiswoode's conduct and representations failed to meet the minimum standard expected of a contractor building such a house. In addition, the referee found Converse and Thompson either solely or jointly responsible for a number of the defects. Although the Paines had moved out of the house without making repairs, the referee determined that the appropriate measure of damages was the cost of repairs.

The Paines and Converse filed motions to amend the referee's report, which were denied by the referee. Spottiswoode and Converse filed objections to the report in the Superior Court. Except for minor adjustments in the amount of interest, the court accepted the referee's recommendations. Spottiswoode then appealed from the resulting judgment and the Paines cross-appealed.

## I.

■■ Because the judgment is based on the referee's report, we review directly the decisions of the referee. *See In re McLoon Oil Co.*, 565 A.2d 997, 1001 (Me. 1989); *Aalberg v. Stevens*, 489 A.2d 1, 3 (Me.1985). We review the referee's findings of fact for clear error, and affirm those findings if supported by any compe-

tent evidence in the record. *See Savage v. Renaud*, 588 A.2d 724, 726 (Me.1991). Moreover, we will not disturb a referee's findings that are supported by competent evidence in the record even if other evidence supports contrary findings. *See Federal Trust Co. v. Cianbro Corp.*, 434 A.2d 42, 44 (Me.1981).

Spottiswoode contends that the referee increased the scope of his obligations to the Paines by imposing liability for defects that resulted from poor design or engineering rather than construction. Specifically, Spottiswoode claims that the referee increased his responsibility with regard to two problems involving the north/south beam. First, after the house was framed Spottiswoode observed that the steel beam running through the attic protruded eighteen inches through the roof on the north side of the house.[2] In order to rectify the problem, Spottiswoode cut off the portion of the beam that stuck out of the roof. Second, because one end of the beam was not anchored to a sufficient support, Spottiswoode carried support for the beam down through various rooms in the house, creating a post in the middle of each room it cut through. The referee recommended recovery for this defect against Spottiswoode.

■ Ordinarily, a contractor who completes a construction project in a workmanlike manner and in strict compliance with plans furnished by the owner will not be held liable for damages resulting from defects in the owner's specifications. *See, e.g., United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918); *Marine Colloids, Inc. v. M.D. Hardy, Inc.*, 433 A.2d 402, 406 (Me.1981). Spottiswoode incorrectly asserts, however, that the contractor need only build in accordance with the plans. By ignoring the contractor's duty to build in a *workmanlike manner*, Spottiswoode attempts to relieve himself of

---

**1.** For convenience, defendants John Spottiswoode and Downeast Construction and Development Corporation are jointly referred to in this opinion as Spottiswoode.

**2.** The record contains contradictory testimony regarding the problem with the beam. Spottis-

woode claimed that the beam, as specified by Design International in the plans, was too long after the roof was redesigned. DiDonato claimed that the beam was properly designed but improperly ordered and installed.

responsibility for his own negligence in constructing the house.

■ In the instant case there was testimony from which the referee could conclude that the error in the length of the beam was due to the contractor's error in ordering it or in installing it. The Paines' expert testified that Spottiswoode's remedy for correcting the error was not in keeping with competent building practices. There was also testimony that Spottiswoode's method of placing a support post caused it to rot at the base. Although the owner warrants the sufficiency of the plans, the contractor is not relieved of his duty to perform in a workmanlike manner. *See Gosselin v. Better Homes, Inc.*, 256 A.2d 629, 640 (Me.1969); *Armstrong v. Bangor Mill Supply Corp.*, 128 Me. 75, 145 A. 741 ·(1929); *Hattin v. Chase*, 88 Me. 237, 33 A. 989 (1895). We have previously stated that "[w]hether the contractor has skillfully complied with the owner's specifications ... [is a] question for the factfinder." *Marine Colloids*, 433 A.2d at 406. There is competent evidence in the record to support the referee's findings with regard to the north/south beam.

■ As part of his discussion of the problems with the north/south beam, the referee's report stated:

It is inconceivable that [Spottiswoode could] bid on a residence of this size and complexity, and then proceed to begin construction on the residence only to discover during the framing phase that the plans he was working off of were not prepared by a licensed engineer. No one else can be at fault for Spottiswoode's lack of knowledge or notice of this glaring mistake.

Spottiswoode contends that this statement establishes that the referee improperly imposed an obligation on him to recognize design defects. The referee in making this statement, however, was discussing a topic unrelated to the north/south beam. The clear import of the statement was not to impose a higher duty on Spottiswoode, but was simply part of the referee's overall evaluation of Spottiswoode's competence. The referee's careless language does not equate to the imposition of an erroneous standard of liability.

Spottiswoode contends that the referee made similar errors in his findings on a number of other defects. Contrary to Spottiswoode's assertion, the referee did not increase his responsibility for those defects. Rather, he made a factual determination that Spottiswoode was at least partially responsible for the defects because he either did not comply with the plans or in other instances did not construct the house in a workmanlike manner. Our review does not reveal any error in the standard of liability applied by the referee.

## II.

■ Spottiswoode next argues that in several instances the referee rejected the evidence of the cost of repair and instead supplied his own estimate of damages. Spottiswoode contends that it is beyond the power of the referee to award damages in an amount that has no support in the record. Because Spottiswoode did not raise this issue in his objections to the referee's report, it was not preserved for appeal. *See* M.R.Civ.P. 53(e)(2). *See also Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57, 58 (Me.1981); *Concord Gen. Mut. Ins. Co. v. Home Indem. Co.*, 368 A.2d 596, 599 (Me.1977).

■ We also conclude there is no obvious error in the referee's assessment of damages. It is not necessary that an expert testify to the exact amount of damages awarded by the referee. *See Banville v. Huckins*, 407 A.2d 294, 298 (Me. 1979). In *Banville* the defendants argued that the referee's damage award was not supported by the evidence because the amount was greater than the amounts testified to by expert witnesses. We rejected that argument, relying on the "well-accepted doctrine that damage assessment is the sole province of the factfinder and will not be disturbed on appeal absent a showing that bias, prejudice, or improper influence motivated the result or it was a result of mistake of fact or law." *Id.* We held that even though no expert had testified to the

exact figure adopted by the referee, the figure was consistent with the evidence and faithful to the mandate that damages consist of the amount required to remedy the defect. *Id.* In this case, the referee's award falls within the discretion authorized in *Banville*.

## III.

■ Because the Paines sold their house before repairing the defects, Spottiswoode argues that the "loss of value" was the proper measure of damages rather than the "cost of repairs." It is settled Maine law that the measure of recovery for defective performance under a construction contract is the difference in value between the value of the performance contracted for and the value of the performance actually rendered. That difference may be proved by evidence of diminution in market value *or* of the amount reasonably required to remedy the defect. *See Anuszewski v. Jurevic,* 566 A.2d 742, 744 (Me.1989) (recovery of amount necessary to complete and repair defects in house); *Parsons v. Beaulieu,* 429 A.2d 214, 217 (Me.1981) (recovery of amount expended to replace defective septic system installed by contractor); *Wimmer v. Down East Properties, Inc.,* 406 A.2d 88, 92 (Me.1979) (recovery of amount expended to drill replacement well). In assessing damages in this case, the referee could properly rely on the evidence concerning the cost of repairing the defects.

## IV.

Finally, Spottiswoode contends that there is no basis for the referee's general finding that he is jointly liable with the other co-defendants because there was no joint action or obligation among them. Moreover, they bore no contractual relationship to one another. Therefore, Spottiswoode argues, the referee should have apportioned any damages assessed against individual defendants based solely on the specific contractual duties each one owed to the Paines.

■ When separate and independent acts of negligence of two or more persons are the direct cause of a single injury and it is impossible to determine apportionment of liability, the actors are jointly and severally liable. *See Atherton v. Crandlemire,* 140 Me. 28, 33 A.2d 303 (1943). This form of negligence has been discussed in terms of the resulting single injury. Under the "single injury" rule, damages are not apportioned unless the negligent defendants are able to sustain their burden of proof as to apportionment. *See Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 297 Minn. 118, 211 N.W.2d 159, 167 (1973). The *Restatement (Second) of Torts* § 433B(2) (1975) states:

> Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each of such actors.

Because none of the defendants introduced evidence on how to apportion the damages, and because some of the damages in this case do not appear to be susceptible of that kind of apportionment, the referee properly determined that there was joint liability for some of the defects in the house.

## V.

■ On their cross-appeal the Paines argue that because Converse subcontracted the structural plans to Thompson, she is responsible for her subcontractor's negligent performance. Thus Converse should be found jointly liable for the damages assessed against Thompson. Because the Paines did not object to the referee's report, this issue has not been preserved for appeal. *See* M.R.Civ.P. 53(e)(2). *See also Concord Gen. Mut. Ins. Co.,* 368 A.2d at 599; *National Advertising Co. v. Town of York,* 345 A.2d 512, 514 (Me.1975). Any error in this regard does not rise to the level of obvious error.

The entry is:

Judgment affirmed.

All concurring.