Wayne VanVOORHEES et al.

v.

Peter DODGE.

Supreme Judicial Court of Maine.

Submitted on Briefs June 20, 1996.

Decided July 11, 1996.

Sandra Hylander Collier, Ferm, Collier & Larson, Ellsworth, for Plaintiffs.

Frank B. Walker, Ellsworth, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN and RUDMAN, JJ.

RUDMAN, Justice.

Peter Dodge appeals from a judgment entered after a jury-waived trial in the Superior Court (Washington County, *Marsano, J.*) awarding compensatory damages and attorney fees to Wayne and Barbara VanVoorhees. On appeal Dodge challenges, *inter alia,* the court's factual findings with respect to his breach of a contract and the court's award of attorney fees to the VanVoorhees pursuant to the Home Construction Contracts Act, 10 M.R.S.A. §§ 1486–90 (Supp. 1995), and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 213 (1989 & Supp.1995) (UTPA). We affirm the judgment.

In May 1991 the VanVoorhees poured a foundation on their shorefront lot in Machiasport. Soon thereafter, Wayne VanVoorhees was contacted by Peter Dodge, who described himself as a construction consultant and designer whose job was to "oversee the building of a house." The VanVoorhees ultimately met with Dodge and hired him to design their home and to provide consulting services. Dodge agreed that once construction began he would provide the VanVoorhees with materials "at cost." Over the next year, between June 1991 and July 1992, Dodge developed plans for a 2300–square-foot home.

As plans for the home began to crystallize, Dodge sent a letter to the VanVoorhees estimating that the cost of constructing the home would be between $65 and $85 per square foot, which amounted to an estimated cost of construction of between $150,000 and $200,000. The VanVoorhees told Dodge they did not want the cost of the home to exceed $150,000 and Dodge assured them, both verbally and in writing, that he could construct the home at that cost.

Construction on the home began in earnest in August of 1992 with Dodge promising a completion date (for at least the home's carriage house apartment) of late October or early November of the same year. Dodge was the party responsible for the day-to-day management of the construction site including the selection and supervision of the subcontractors and the ordering of materials. Although Dodge testified to the contrary, four experienced subcontractors each testified that work on the VanVoorhees' home suffered because of Dodge's incompetence both as a designer and a manager. Subcontractors were repeatedly called to the site when the home was not ready for them to begin their portion of the project, windows were mismeasured, rooms were poorly designed requiring redesigning during the construction process, and certain portions of the construction occurred out of sequence, result-

ing in damage to the home and additional cost.

As summer quickly turned to autumn and with winter fast approaching, several factors led the VanVoorhees to dismiss Dodge. First, the VanVoorhees came to the realization that no part of their new home would be completed by late October or early November as promised by Dodge. Second, the VanVoorhees learned that Dodge had broken his "at cost" promise to them by charging them more than $37,000 for windows that cost approximately $30,000 and that never were delivered. Third, Dodge informed the VanVoorhees that the final cost of construction for the home would exceed his $150,000 estimate by between $80,000 and $90,000.

After discharging Dodge, the VanVoorhees continued the construction of their home as the weather and their finances permitted. As a result of Dodge's failure to complete the home by November 1992, the VanVoorhees incurred additional rental and living expenses from November 1992 until September 1993 while they awaited completion of the carriage house apartment. Additionally, by the time of the trial the amounts expended to build the home had burgeoned to almost $300,000.

The VanVoorhees filed a seven-count complaint against Dodge alleging, *inter alia,* breach of contract and violation of the UTPA. Dodge responded to VanVoorhees' complaint and brought a counterclaim alleging monies to be due to him. Following a jury-waived trial, the court found that there was an oral contract between Dodge and the VanVoorhees for the construction of the house and that Dodge had breached the contract. Based on the breach of contract the court awarded the VanVoorhees $34,000 in restitution for the undelivered windows, $35,000 in compensatory damages, and $4,000 in consequential damages. Additionally, the court found that Dodge had violated the Home Construction Contract Act and, thereby, the UTPA, by failing to provide the VanVoorhees with a written contract. The court awarded the VanVoorhees $3,500 in attorney fees pursuant to the UTPA. The court further awarded the VanVoorhees judgment on Dodge's counterclaim.

I

*Breach of Contract*

■ Dodge first contends that the court erred in finding that he had breached his contract with the VanVoorhees. We disagree.

■ "It is the duty of the fact-finder to determine the existence of the parol contract, its extent and limitations, in other words, to find not only what language was used, but its purport and meaning." *Dehahn v. Innes,* 356 A.2d 711, 716 (Me.1976). Similarly, the question of whether there has been a breach of contract is a question of fact. *See Marcus v. Lee S. Wilbur & Co.,* 588 A.2d 757, 759 (Me.1991). We will not set aside the factual findings of the trial court unless they are clearly erroneous. *Barker v. St. Mary's Regional Medical Ctr.,* 663 A.2d 44, 46 (Me. 1995). A trial court's factual finding is "clearly erroneous" if there is no competent evidence in the record to support it. *FDIC v. Proia,* 663 A.2d 1252, 1254 (Me.1995).

■ The court's finding that Dodge and the VanVoorhees had entered into a contract and that Dodge had breached the contract is not clearly erroneous.

To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.

*Roy v. Danis,* 553 A.2d 663, 664 (Me.1989) (citations omitted). The determination of the credibility of the witnesses is a matter solely within the province of a presiding judge acting as the finder of fact, and the court here was free to discount or entirely ignore testimony the presiding judge found to be incredible. *See Gray v. Gray,* 609 A.2d 694, 697 (Me.1992). Competent evidence on the record supports both the court's finding that Dodge had agreed to design and build the VanVoorhees' home in return for the VanVoorhees' promise to pay him at an hourly

rate for his services and that Dodge had breached this agreement by failing to provide materials "at cost" and by failing to complete construction of portions of the home on time.

## II

### Contract Damages

■ Dodge next challenges the court's award of damages based on the breach of his contract with the VanVoorhees. The measure of recovery for defective or incomplete performance of a construction contract is the difference in value between the value of the performance contracted for and the value of the performance actually rendered. *Paine v. Spottiswoode*, 612 A.2d 235, 240 (Me.1992). This difference may be proved either by the diminution in market value or by the amount reasonably required to remedy the defect. *Id. See also, Kleinschmidt v. Morrow*, 642 A.2d 161, 165 (Me.1994) (approving calculation of compensatory damages as the difference between the contract price and the actual total cost to the homeowner of completing the home). The assessment of damages is the sole province of the fact-finder, *Banville v. Huckins*, 407 A.2d 294, 296 (Me.1979), and we will not disturb an award of damages unless there is no basis in the evidence for the award. *McGrath v. Hills*, 662 A.2d 215, 219 (Me.1995). "Although damages need not be proved to a mathematical certainty, an award must be supported by some evidence of the value of the property damaged or expenses incurred." *Currier v. Cyr*, 570 A.2d 1205, 1210 (Me.1990).

■ In this case, the evidence presented at trial clearly supports the trial court's award of damages. The VanVoorhees presented testimony and documentary evidence that corroborated their claim that at the time of trial the cost of constructing their home was rapidly approaching the $300,000 mark. Exhibits and testimony revealed that prior to Dodge's dismissal the cost of construction was approaching $150,000, that after his termination the VanVoorhees incurred approximately another $144,000 in construction costs, and that they anticipated spending another $10,000 to complete the project. The evidence also supported the court's related conclusion that not all of the additional construction costs could be attributed to Dodge's breach because some of these costs resulted from the VanVoorhees alteration of the construction plans. Thus, the court's damage award of $73,000 is consistent with the evidence.

## III

### Attorney Fees

Dodge finally contends that the trial court erred or abused its discretion in granting attorney fees to the VanVoorhees pursuant to the Home Construction Contracts Act, 10 M.R.S.A. §§ 1486–90 (Supp.1995),[1] and the UTPA, 5 M.R.S.A. § 213 (1989 & Supp. 1995).[2] In particular, Dodge contends that he was not a "home construction contractor" to which the Act should apply and, even if the Act did apply, the court abused its dis-

---

1. The Home Construction Contracts Act provides in pertinent part:

§ 1486. **Definitions**

. . . .

4. **Home construction contract.** "Home construction contract" means a contract to build, remodel or repair a residence, including not only structural work but also electrical, plumbing and heating work; carpeting; window replacements; and other nonstructural work ...

§ 1487. **Home construction contracts**

Any home construction contract for more than $1,400 in materials and labor must be in writing and signed by both the home construction contractor and the homeowner or lessee. Both the contractor and the homeowner or lessee shall receive a copy of the executed contract prior to any work performance. This basic contract must contain the entire agreement between the homeowner or lessee and the home construction contractor. . . .

§ 1490 **Penalties**
1. **Violation.** Any violation of this chapter shall constitute prima facie evidence of a violation of the Unfair Trade Practices Act, [5 M.R.S.A. § 206 *et seq.*]

2. The UTPA provides in pertinent part:

§ 213. **Private remedies**

. . . .

2. **Fees and costs.** If the court finds, in any action commenced under this section that there has been a violation of section 207, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action.

cretion by not limiting the award of attorney fees to amounts expended in prosecution of the UTPA claim.

■ Contrary to Dodge's contention, an agreement to build a home is a home construction contract within the meaning of the Home Construction Contracts Act. *See William Mushero, Inc. v. Hull,* 667 A.2d 853, 855 (Me.1995); *Parker v. Ayre,* 612 A.2d 1283, 1284 (Me.1992). Because the agreement between Dodge and the VanVoorhees was oral and in excess of $1,400, it violated the Act.

■ "A violation of the Home. Construction Contracts Act is prima facie evidence of a violation of the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205–A to § 214...." *William Mushero, Inc. v. Hull,* 667 A.2d at 855. To be entitled to the remedial measures authorized by the UTPA, the homeowner must show a loss of money or property as a result of the UTPA violation. 5 M.R.S.A. § 213; *Parker v. Ayre,* 612 A.2d 1283, 1284–85 (Me.1992) (no recovery permitted pursuant to UTPA when homeowner failed to demonstrate a loss of money or property as result of oral contract). Hence, to avail themselves of the remedies available pursuant to the UTPA, claimants must demonstrate not only a violation of the UTPA but also that a portion of their damages are attributable to the UTPA violation. Accordingly, in *Mushero* we concluded that amounts expended by a homeowner to correct a contractor's defective performance pursuant to an oral contract could constitute damages resulting from the contractor's violation of the UTPA. *See William Mushero, Inc. v. Hull,* 667 A.2d at 855.

■ Because neither party requested findings of fact, we assume that the trial court found all the facts necessary to support its decision and therefore properly found, as evidenced by the judgment, that the VanVoorhees had demonstrated a loss of money as a result of Dodge's UTPA violation and were entitled to attorney fees pursuant to the UTPA. *See Smile, Inc. v. Moosehead Sanitary Dist.,* 649 A.2d 1103, 1106 (Me.1994).

■ Dodge is correct in his contention that attorney fees are recoverable pursuant to the UTPA only to the extent that the fees were earned pursuing a UTPA claim. *William Mushero, Inc. v. Hull,* 667 A.2d 853, 855 (Me.1995). "Normally, the person seeking costs should provide affidavits and bills which separate the costs of pursuing the UTPA claim from those incurred in pursuing a remedy not available under the Act." *Beaulieu v. Dorsey,* 562 A.2d 678, 679 (Me. 1989).

■ When a court is authorized by law to award attorney fees we review an award of attorney fees for an abuse of the court's discretion, *First NH Banks Granite State v. Scarborough,* 615 A.2d 248, 251 (Me. 1992), with the trial court being given "broad discretion in determining the award...." *Colony Cadillac & Oldsmobile v. Yerdon,* 558 A.2d 364, 368 (Me.1989). In this case, the VanVoorhees sought in excess of $7,500 in attorney fees but in requesting these fees failed to submit an affidavit that demonstrated that the fees they sought were incurred in pursuit of their UTPA claim. Despite the fact that VanVoorhees' attorney's affidavit and billing records failed to identify with specificity which amounts were attributable to the UTPA claim, Dodge made no objection to the VanVoorhees' accounting nor moved that the court make specific findings of fact with respect to its award of attorney fees. *Cf. Beaulieu v. Dorsey,* 562 A.2d at 679 (when party did not object to accounting of attorney fees court's award reviewed only for obvious error). The trial court, however, properly recognized that in keeping with our decision in *Beaulieu,* it could only award reasonable attorney fees incurred in pursuing the UTPA claim and accordingly limited the VanVoorhees' award of attorney fees to $3,500. Based on the record in this case, we cannot conclude that the trial court abused its discretion or committed obvious error in awarding the VanVoorhees attorney fees in the amount of $3,500 for their UTPA claim.

Because we affirm the trial court's entry of a judgment based on the VanVoorhees' breach of contract claim, we do not reach the remainder of Dodge's contentions. Finding no error, we affirm the judgment entered on Dodge's counterclaim.

The entry is:

Judgment affirmed.

All concurring.