STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-00-038

TEH-CUM- 5/17/2002

DONALD L. GARBRECHT
LAW LIBRARY

JUN 17 2002

RICHARD W. BRACE, ET AL,[1]

Plaintiffs

vs.

DECISION AND ORDER

G. FREDERICK TITCOMB, ET AL,

Defendants

The defendant G. Frederick Titcomb, Inc. ("Titcomb-Corp") is a closely held corporation that provides general contracting services for the construction, renovation and remodeling of buildings. The defendant G. Frederick Titcomb ("Frederick") is its sole shareholder, officer and employee.

In 1989, the plaintiffs Richard and Cheryl Brace purchased lakefront property on Basswood Bay Road, Harrison, Maine. The property included a summer home with exterior dimensions of approximately 26' by 36'.

---

[1] This case was originally styled as *Hancock Lumber Company, Inc., v. G. Frederick Titcomb.* Pursuant to the stipulations of the parties, all of the claims of the original plaintiff Hancock Lumber Company, Inc., have been dismissed without prejudice. As a result, both Hancock Lumber and Norway Savings Bank are no longer parties in this action.

The trial proceeded on the cross claims of the defendants Brace and Titcomb against each other. Simply for ease of identification throughout the trial and in this Judgment, Richard W. Brace and Cheryl M. Brace are designated and referred to as the plaintiffs and G. Frederick Titcomb and G. Frederick Titcomb, Inc., are designated ¿ d referred to as the defendants.

1

In July 1999, Richard Brace first contacted Frederick about doing renovation and expansion work on the Braces's summer home. They had several discussions during which Frederick said that he would be personally on the job site and that his company would stand behind its work. In September 1999, the parties entered into a written contract for the renovation and substantial expansion of the home. The agreement was drafted by Frederick on the stationery of Titcomb-Corp and identified Cheryl Brace as the "customer"[2] and Titcomb-Corp as the "contractor." After adjusting for credits and unused allowances, the contractor agreed to provide the necessary labor and materials for a total fixed price of $144,250. In addition, the contractor provided extra items that were not part of the underlying contract for an additional $5,300: a half bathroom (plumbing not included)($1,600); a roof extension for the entry deck ($350); a Salt Box generator and storage building ($3,000); and two triangle louvers ($350). The Braces obtained a construction loan from Norway Savings Bank and agreed to pay the contractor pursuant to a progress or draw payment schedule set forth in the contract.

Between September 7, 1999, and January 11, 2000, the contractor submitted four draw requests totalling $125,693. Mr. Brace became increasingly concerned that each draw request did not fully conform to the

_____

[2]At trial, the parties acknowledged that, in fact, the "customer" was Cheryl and Richard Brace.

contract requirements and included work that had not been done.[3] He was also concerned about construction defects and the quality of the contractor's work. Frederick did the electrical work for the house even though he was not licensed to do so. As a result, an electrician hired by the Braces to run electrical service to the house refused to tie into the work done by Frederick.[4] There were other contract nonconformities and defects with respect to the I-beam floor joists and perimeter joists, sub-flooring, the bead-board cathedral ceiling in the great room (kitchen/living room), half-walls in the kitchen, the exterior porches or decks, elevations of the new foundation flooring, the seal or bond at the joint between the new and existing foundations, the use of steel fascias instead of aluminum as required by the contract, glass sliding door and windows in the basement, drainage, chimney refacing, lack of headers for load bearing walls, and the wrong color bay window.[5]

In mid-January 2000, the Braces were informed that a major material supplier, Hancock Lumber, had not been paid by the contractor and intended to place a mechanics' lien on their property. On February 9, 2000, the supplier's attorney notified the Braces that the lien had been recorded

[3]The second draw request included items totalling $2,000 that had been paid as part of the first request. The third included items not yet completed: i.e., installation of porch, entry decks and framing; rough wiring; and excavation. The fourth requested more than the amount allowed by the contract and included electrical wiring personally done by Frederick, who was not licensed to do such work.

[4]Frederick Titcomb was criminally charged and convicted in connection with the electrical work done by him, and the Maine State Electrical Inspector ordered that his work be corrected by a licensed electrician.

[5]The correct replacement bay window was delivered to the site, but not installed, at the time the contract was terminated by the Braces in February 2000.

on the land records.[6] As a result, Norway Savings Bank froze further disbursement of the construction loan proceeds. On February 16, 2000, the Braces notified the contractor by letter that they were terminating the contract. As of that date, the Braces's total payments to the contractor were $78,748 and the contractor's total expenditures for the project were $90,000.

The Braces then hired a new contractor, D.C. Building & Remodeling ("D.C. B&R"), to repair the defects and finish the work contemplated by the contract.[7] The new contractor completed the work on a "time and materials" basis by December 18, 2000,[8] and was paid $130,686.30 by the Braces.[9] Of this sum, $17,320.59 is not attributable to repairing or finishing the original contract work and should not be included.[10] Accordingly, the court finds that, in addition to the sums already paid to Titcomb-Corp, it cost the Braces $113,365.71 to repair the defective work and complete the project.

---

[6]Hancock Lumber subsequently sued the Braces on its lien claim and was the original plaintiff in this action. As previously noted, Hancock is no longer a party in this case.

[7]The principals of D.C. B&R were Mike Dean and John Courteau.

[8]After December 18, 2000, D.C. R&B did additional work not related to the subject matter of this case.

[9]Although not conceding liability or the validity of their respective legal and factual arguments, the parties have agreed that, in its analysis of the claims in this case, the court may consider the summary figures set forth in Attorney Vickerson's letter to the court, dated March 18, 2002, without having to undertake additional analysis concerning the composition of those figures.

[10]Charges for labor ($1,760), fireplace ($3,960.59), tree removal ($1,600), and landscaping ($10,000) are excluded.

4

The Braces assert claims[11] against the defendants for breach of contract (Count I), breach of warranty (Count II), violation of the Home Construction Contract Act (Count III), violation of the Unfair Trade Practices Act (Count IV), and slander of title (Count V).[12] Correspondingly, the defendants assert claims against the Braces for violation of the Prompt Payment Act (Count I), unjust enrichment (Count II), mechanics' lien (Count III), and contribution (Count IV).[13]

## DISCUSSION

### A. Breach of Contract

Based upon the foregoing, the court finds that the contractor breached the contract and that the Braces paid a total of $192,113.71 for a result that the contractor agreed to provide for a fixed contract price of $144,250, plus extra items totalling $5,300. Accordingly, the Braces have been damaged in the amount of $42,563.71. *See VanVoorhees v. Dodge*, 679 A.2d 1077, 1081 (Me. 1996); *see also Kleinschmidt v. Morrow*, 642 A.2d 161, 165 (Me. 1994).

### B. Home Construction Contract Act

The contract in this case did not comply with the Maine Home Construction Contract Act in several respects. It did not include a starting

---

[11]Originally, the Braces and Frederick and Titcomb-Corp were party-defendants in this action. Their respective claims against each other were made as cross-claims.

[12]The Braces also made a claim for unlawful electrical installations pursuant to 32 M.R.S.A. § 1105. However, that statute only provides remedies to the state and is not a viable claim in this case.

[13] *See supra* note 12.

5

date, a completion date, a warranty statement, an insulation disclosure statement, dispute resolution procedures, a change order statement, or an energy standards statement. 10 M.R.S.A. § 1487(3),(7)-(9), (11) & (12). The parties did not exempt themselves from the requirements of the Act. 10 M.R.S.A. § 1489. Accordingly, the violations by the contractor constitute prima facie evidence of a violation of the UTPA. 10 M.R.S.A. § 1490; 5 M.R.S.A. § 205-A, et seq.

C.    Unfair Trade Practices Act

Under the circumstances of this case, the court concludes that the violation of the Home Construction Contract Act is, in fact, a violation of the UTPA. Further, the defective work, including the illegal electrical installation by Frederick, also constitutes an unfair trade practice within the meaning of the Act and all are attributable to the contractor. The resulting injury to the Braces was substantial, was not "outweighed by any countervailing benefits to consumers or competition," and could not reasonably have been avoided by the homeowners. *Suminski v. Maine Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174 n.1 (Me. 1992); *see also* 15 U.S.C.A. § 45(n) (1997). However, the analysis does not end there.

The Braces must also show that they sustained a loss of money or property as a result of the UTPA violations. 5 M.R.S.A. § 213; *VanVoorhees*, 679 A.2d at 1082. They have demonstrated no such loss as a result of the contractor's violations of the Home Construction Contract Act. However, they have sustained money damages as a result of the contractor's defective performance and contract breach. *William Mushero, Inc. v. Hull*, 667 A.2d

6

853, 855 (Me. 1995) (amounts expended by homeowner to correct contractor's defective performance can constitute damages resulting from violation of UTPA).

Based upon the foregoing, the Braces are entitled to recover their reasonable attorney's fees, but "only to the extent that the fees were earned pursuing a UTPA claim." *VanVoorhess*, 679 A.2d at 1082. The Braces counsel shall be given an opportunity to submit an appropriate attorney's fees affidavit to the court and the defendants shall be given an opportunity to file an objection thereto. *See Beaulieu v. Dorsey*, 562 A.2d 678, 679 (Me. 1989) ("the person seeking costs should provide affidavits and bills which separate the costs of pursuing the UTPA claim from those incurred in pursuing a remedy not available under the Act").

D.    Individual or Corporate Liability

The Braces assert that the court should pierce the corporate veil of Titcomb-Corp and find Frederick personally liable for the damages owed to them. "As a matter of public policy, corporations are separate legal entities with limited liability [and] courts are generally reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice." *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 5, 720 A.2d 568, 571 (quotations and citations omitted). The Law Court has established a two part test for balancing the policies of "encouraging business development" and "protecting those who deal with the corporation." *Johnson*, 1998 ME 244, ¶ 6, 720 A.2d at 571. This test requires a plaintiff to establish (1) an abuse of the privilege of a separate

7

corporate entity by the defendant, and (2) an unjust or inequitable result if the separate corporate entity is recognized. The evidence in this case does not disclose any abuse of the corporate status privilege. Although Frederick paid some personal obligations through the corporation's account, it was done for convenience and without subterfuge and there is no evidence that it was part of a significantly recurring pattern.

The court is mindful that the electrical work done by Frederick was illegal and was done by him with the full knowledge of its illegality. The law responded by holding Frederick criminally responsible, individually. *See State v. Placzek*, 380 A.2d 1010, 1015 (Me. 1977) (principle widely embraced that, under certain circumstances, corporate agent criminally liable for acts committed in name of his corporation). However, in the context of the legal theories pursued by the Braces in this case, the court is unable to find any corresponding principle in the civil law. Rather, the civil test here is whether there has been an abuse of the privilege of having a separate corporate entity and, if so, whether it would be unjust or inequitable to recognize the separate corporate existence. Although Frederick broke the law in the performance of a contract between his corporation and the plaintiffs, he did not create or use the corporate entity for the purpose of committing or facilitating the crime. Thus, the Braces have not established the "abuse of privilege" prong of the test for piercing the corporate veil and the court need not reach the issue of whether it would be unjust or inequitable to recognize the separate corporate existence of Titcomb-Corp.

8

## DECISION

Based upon the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

A.   On the Cross-Claims of Plaintiffs (the Braces) against Defendant G. Frederick Titcomb, Inc., Judgment for Plaintiffs in the amount of $42,563.71, together with reasonable attorney's fees incurred in pursuing their UTPA claim, plus costs of this action;

Plaintiffs' counsel shall have a period of 20 days from the date of this Decision within which to file and serve upon Defendants an appropriate attorney's fees affidavit, and Defendants shall have 20 days from the date of such service within which to file and serve on Plaintiffs any opposition thereto;

C.   On the Cross-Claims of Plaintiffs against Defendant G. Frederick Titcomb, individually, Judgment for Defendant; and

D.   On the Cross-Claims of Defendants G. Frederick Titcomb and G. Frederick Titcomb, Inc., Judgment for Plaintiffs.

Dated:   May 17, 2002

_____
Justice, Superior Court

9

Date Filed ___03-24-00___ ___CUMBERLAND___ Docket No. ___RE 00-038___

County

Action ___MECHANICS LIEN___

HANCOCK LUMBER COMPANY, INC.

G. FREDERICK TITCOMB
G. FREDERICK TITCOMB, INC.
RICHARD W. BRACE and
CHERYL M. BRACE
NORWAY SAVINGS BANK

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ARNOLD C. MACDONALD ESQ 775-3581<br>193 MIDDLE ST., PORTLAND ME 04101 | WILLIAM L. VICKERSON, ESQ.<br>P.O. BOX 465 ((Titcombs)<br>PORTLAND, MAINE 04112-0465<br>775-5200<br><br>Timothy H.Norton, Esq. (Brace)<br>PO Box 597, Portland ME 04112 |

| Date of Entry | |
|---|---|
| 2000<br>Mar. 27 | Received 03-24-00:<br>Complaint Summary Sheet filed.<br>Complaint with Exhibits A,B,C and D filed. |
| "    " | |
| Mar. 28 | On 03-27-00:<br>Clerk's Certificate filed with Registry of Deeds. Copy and receipt filed. |
| Mar. 31 | Received 3-31-00.<br>Summons filed showing officer's return of service on 3-28-00 upon<br>Defendant, Norway Savings Bank. |
| Apr. 14 | Received 4-14-00.<br>Defendant, Norway Savings Bank's, Answer filed. |
| May 2 | Received 05/01/00:<br>Plaintiff's Motion to Amend Complaint with exhibit A Amend Complaint filed. |
| ""    "" | Plaintiff's Motion for Approval of Attachment and Trustee Process with<br>exhibit A Affidavit of Nikki Lavigne and attachments filed. |
| ""    "" | Memorandum in Support of Motion for Approval of Attachment and Trustee<br>Process filed. |
| May 10 | Received 05-10-00:<br>Defendants, G. Frederick Titcomb and G. Frederick Titcomb, Inc. Answer and<br>Cross Claim Against Dependants Richard W. Brace and Cheryl M. Brace with<br>Exhibits 1 and 2 filed. |
| "    " | Counterclaim and Crossclaim Summary Sheet filed. |
| May 16 | Received 05-15-00:<br>Order filed. (Delahanty, J.).<br>This Court hereby GRANTS and Motion and the Amended Complaint is deemed fil<br>as of this date.<br>On 05-16-00 Copies mailed to Arnold C. Macdonald, Es.q and William L.<br>Vickerson, Esq. |