STATE OF MAINE
CUMBERLAND, SS.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2002 SEP 20 P 12: 23

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-01-052
TEH -CUM- 9/19/2002

FREDDIE E. LEE,

           Plaintiff

vs.

           DECISION AND ORDER

DONALD SURRETTE
dba Bridgton Apartments,

DONALD L. GARBRECHT
LAW LIBRARY

OCT 4 2002

           Defendant

The plaintiff owns and operates an excavation business. The defendant owns and operates an apartment complex in Bridgton, Maine known as Bridgton Apartments.

On April 23, 2001 the parties entered into an oral agreement pursuant to which the plaintiff was to do excavation work around Building Number One of the complex to divert rain and runoff water, and correct defects in and expand the parking lot serving that building.[1] In return, the defendant agreed to pay the plaintiff on a time-basis at the rate of $35 per hour.[2]

The plaintiff began the job on April 24, 2001, using a bulldozer and a backhoe. The plaintiff submitted bills to the defendant totalling $831.25:

---

[1]The plaintiff also did work around Building Number Three. However, that work and the plaintiff's related billing are not the subject of this litigation.

[2]There was some disagreement between the parties as to whether their contract included an exception of some sort in the event ledge was discovered during the course of the work. The court finds that there was no such exception in the agreement and, in any event, is satisfied from the evidence that no ledge was encountered at the job site.

1

one for $813.75 reflecting 23.25 hours of work done through April 27th, and another in the amount of $17.50 for one-half hour's work on April 30th.[3] Defendant's Exhs. 3 & 4. In the performance of the work, the plaintiff left permanent track marks from his heavy equipment embedded in the asphalt driveway, cut a ditch 8" deep across the entrance to the parking lot which drained surface water in the wrong direction, and placed a large boulder in the middle of the parking lot which reduced the number of parking spaces from five to two.

By letter dated April 30, 2001, the defendant advised the plaintiff that he was not satisfied with the quality of the plaintiff's "workmanship" and was withholding payment of his bills until the problems in the parking area were fixed. Defendant's Exh. 5. The defendant also indicated that he was hiring another contractor to "correct" the plaintiff's work. *Id.* In response, the plaintiff stopped working and the oral contract was effectively terminated by the parties as of the date of the defendant's letter. When the plaintiff stopped working, the parking lot was left in a muddy and generally unusable condition.

The defendant hired JK Maintenance ("JK") to correct and complete the plaintiff's work. JK charged $1,600 to excavate and haul material from the premises, move the boulder in the parking lot, dig out the surrounding bank area and use existing rocks to make a retaining wall, install a swail to

_____

[3]The latter invoice also reflects charges totalling $125 for transporting equipment to and from the job site. However, these charges are not allowed by the court since the parties' oral agreement only contemplated an hourly billing for excavation services rendered.

2

divert surface water, relevel the driveway, and bring in 12 yards of gravel compacting material. Defendant's Exhs. 6.[4] Of this sum, $400 is attributable to correcting the plaintiff's work.[5]

The plaintiff asserts a mechanics lien claim for the amount of his unpaid invoices. Correspondingly, the defendant counterclaims against the plaintiff for breach of contract (Count I) and negligence (Count IV).

## DISCUSSION

The court finds that there was a contract between the parties, that the plaintiff's performance under the agreement was defective, and that, as a result of the plaintiff's negligence, the parking lot was rendered substantially unusable and surface water was improperly drained. A contractor has a duty to perform in a workmanlike manner, and can be liable for negligence in the performance of his contractual obligations. *Paine v. Spottiswoode*, 612 A.2d 235, 238-39 (Me. 1992). Based upon the foregoing, the court finds that the defendant has been damaged in the amount of $400, being the cost incurred to have JK repair the defective work. *See Van voorhees v. Dodge*, 679 A.2d 1077, 1081 (Me. 1996); *see also Kleinschmidt v. Morrow*, 642 A.2d 161, 165 (Me. 1994). "[The] measure of recovery for incomplete or defective

---

[4]The defendant also paid JK $873.80 for additional work. These charges are not related to the subject matter of this litigation and are not allowed as damages in this case.

Further, the defendant paid JK and Technical Services, Inc., a total of $389.38 to determine whether the plaintiff had caused any damage to the septic system of the apartment complex. No damage was found and these charges are also not allowed.

[5]Jack Kostka, the owner of JK, testified credibly that, if his company had been hired to do the original work from the outset of the project, it would have only charged the defendant $1,200.

3

work [is] 'the amount reasonably required to remedy the defect' as specifically measured by the actual cost of repair." Anuszewski v. Jurevic, 566 A.2d 742, 744 (Me. 1989). As a result, after allowing for the costs incurred by the defendant for correcting the plaintiff's work, the amount owed by the defendant to the plaintiff, and for which the plaintiff is entitled to a lien, is $431.25. 10 M.R.S.A. § 3251; Pond Cove Millwork Co. v. Steeves, 598 A.2d 1181, 1182 (Me. 1991) (the amount owed to a contractor "may be subject to deductions or setoffs ... for expenses incurred or damages sustained" by the owner to remedy the contractor's defective performance).

## DECISION

Based upon the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

A.  On Defendant's Counterclaims, Judgment for Defendant in the amount of $400, which is allowed as a setoff against Plaintiff's claim;

B.  On Plaintiff's Complaint, after allowance for the damages awarded to Defendant on his Counterclaims, Judgment for Plaintiff in the net amount of $431.25; and

C.  Neither party is allowed costs in this action.

Dated:  September 19, 2002

_____
Justice, Superior Court

4

Date Filed __05-24-01__ ___Cumberland___ Docket No. __RE-01-52__
                            County

Action __Real Estate  Mechanics Liens__

Freddie F.Lee                          Donald Surrette d/b/a
d/b/a The Earthmover                   Bridgton Apartments

                              vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Freddie F. Lee<br>RR # 1 Box 498<br>Bridgton, Maine 04009 | ~~Donald Surrette, Pro Se~~<br>12 SANDY LANE<br>SALISBURY, MA  01952<br>  DAVID PIERSON, ESQ  777-4600<br>  PO BOX 7120<br>  LEWISTON, ME 04243 |

| Date of Entry | |
|---|---|
| 2001<br>May 25 | Received 05-24-01<br>Summary Sheet filed.<br>Complaint with Exhibit's A - C filed. |
| June 12 | Received 6-12-01:<br>Defendants Answer to Complaint filed. |
| June 13 | Received 06-13-01:<br>Affidavit of Donald Surrette filed. |
| June 15 | Received 06-15-01:<br>Summons filed showing officer's return of service on June 4, 2001 upon Defendant, Donald Surrette. |
| Jun. 27 | Received 06-27-01:<br>Scheduling Order filed. (Humphrey, J.).<br>Scheduling Order filed. Discovery deadline is February 27, 2002.<br>On 06-27-01 Copies mailed to Freddie F. Lee at RR#1 Box 498, Bridgton, Maine 04009 and Donald Surrette at 12 Sandy Lane, Salisbury, Ma 01952. |
| Oct 17 | Received 10-17-01:<br>Entry of Appearance by David Pierson, Esq on behalf of Defendant, Donald Surrette filed. |
| Oct. 23 | Received 10/23/01:<br>Defendant Donald Surrett's Motion to Amend his Answer and counterclaim with incorporated memorandum of Law filed. |
| " " | Defendant's Amended Answer and Counterclaim filed. |
| Nov. 1 | Received 10-30-01:<br>Plaintiff's Objection to Defendant's Motion to Amend Answer filed. |

GO TO NEXT PAGE