**Paul SEARLES**

v.

**TRUSTEES OF ST. JOSEPH'S COLLEGE, et al.**

Supreme Judicial Court of Maine.

Argued Dec. 3, 1996.

Decided June 6, 1997.

Paul F. Macri (orally) Berman & Simmons, P.A., Lewiston, Ronald J. Cullenberg Farmington, for plaintiff.

Stephen C. Whiting (orally) Douglas, Whiting, Denham & Rodgers, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Paul Searles appeals from the summary judgment entered for the defendants in the Superior Court (Franklin County, *Marden, J.*). Searles alleged that while playing basketball for St. Joseph's College the negligence of the defendants caused him permanent injuries and that they breached a contract to pay the medical expenses related to his injuries. Because we conclude that genuine issues of material fact exist on Searles's negligence claims, we vacate the judgment in part.

I

[¶ 2] Paul Searles entered St. Joseph's College as a freshman in 1988, having been awarded an athletic scholarship. Searles alleges that while playing basketball he began experiencing pain in his knees during the fall semester of 1988. In January 1989 Searles was diagnosed with patellar tendinitis. He continued to play basketball for the remainder of the school year, and he returned to

play for the 1989–1990 season. He stopped playing in 1990 and had surgery on his knees in 1990 and again in 1991.

[¶ 3] In 1994 Searles filed the present action against St. Joseph's College, Rick Simonds, the school's basketball coach, and Peter Wheeler, the athletic trainer, alleging that "[d]espite medical advice and information suggesting that the Plaintiff should not be playing basketball, Defendant Simonds insisted that Paul Searles play. [As a] result, Paul Searles's knees became permanently impaired." Searles sought damages for his injuries and reimbursement for related medical expenses, alleging the existence of an oral contract requiring the school to pay his medical bills. Searles also alleged intentional infliction of emotional distress and sought punitive damages. The court granted the defendants' motion for a summary judgment on all counts of Searles's complaint. Searles does not challenge the judgment on Counts III and IV,[1] but he contends on appeal that the court erred by granting a summary judgment on the negligence and contract counts of his complaint.

[¶ 4] We review the entry of a summary judgment for errors of law, viewing the evidence in a light most favorable to the party against whom the summary judgment was entered. *Lynch v. Ouellette*, 670 A.2d 948, 949 (Me.1996). We undertake an independent review of the record to determine if there is a genuine issue of material fact and if the moving party was entitled to a judgment as a matter of law. *First Citizens Bank v. M.R. Doody, Inc.*, 669 A.2d 743, 744 (Me.1995). "A summary judgment is an extreme remedy and should be granted in favor of a defendant only when the facts before the court so conclusively preclude recovery by the plaintiff that a judgment in favor of the defendant is the only possible result as a matter of law." *Binette v. Dyer Library Assoc.*, 688 A.2d 898, 901 (Me.1996).

---

1. Searles's amended complaint has seven counts: breach of contract (Count I); negligence by Simonds and the liability of St. Joseph's on the basis of respondeat superior (Counts II and V); intentional infliction of emotional distress (Count III); punitive damages (Count IV); negligence by Wheeler and the responsibility of St. Joseph's on the basis of respondeat superior (Counts VI and VII).

## II

### The Negligence Claim against Simonds

[¶ 5] The existence of a duty is a question of law. *Joy v. E.M.M.C.*, 529 A.2d 1364, 1365 (Me.1987). "Duty involves the question of 'whether the defendant is under any obligation for the benefit of the particular plaintiff.' When a court imposes a duty in a negligence case, 'the duty is always the same-to conform to the legal standard of reasonable conduct in the light of the apparent risk.'" *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me.1988) (quoting W.P. Keeton, Prosser and Keeton on Torts § 53 at 359 (5th ed. 1984)). We have previously stated that a college has a legal duty to exercise reasonable care towards its students. *Isaacson v. Husson College*, 297 A.2d 98, 103 (Me.1972). *See also Schultz v. Gould Academy*, 332 A.2d 368, 370 (Me.1975) (duty owed by private boarding school); *Milliken v. City of Lewiston*, 580 A.2d 151, 152 (Me.1990) (duty owed by public junior high school). That duty encompasses the duty of college coaches and athletic trainers to exercise reasonable care for the health and safety of student athletes. *Dudley v. William Penn College*, 219 N.W.2d 484, 486 (Iowa 1974); *Tan v. Goddard*, 13 Cal.App.4th 1528, 17 Cal.Rptr.2d 89, 92–3 (1993). See *generally* Cathy Jones, College Athletes: *Illness or Injury and the Decision to Return to Play*, 40 Buff. L.Rev. 113 (1992).

[¶ 6] By granting the motion for a summary judgment on the negligence claim against Simonds and St. Joseph's, set forth in Counts II and V of Searles's complaint, the court failed to recognize Simonds's duty to exercise reasonable care for the health and safety of Searles. Whether Simonds breached that duty when Searles played basketball is a question of fact for the jury to consider. "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine question of fact exists. The court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Tall-wood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me.1976).

[¶ 7] In his opposition to the defendants' motion for a summary judgment, Searles was "obligated to produce specific controverting facts exposing the existence of a genuine issue." *Cloutier, Barrett, Cloutier & Conley, P.A. v. Wax*, 604 A.2d 42, 44 (Me.1992). Searles alleged that Simonds "knew or should have known Paul Searles should not have been playing basketball in his condition, and should not have played plaintiff." Searles's response to the summary judgment motion included citations to the deposition testimony of Peter Wheeler, St. Joseph's trainer, who stated that he recognized the nature of Searles's problem, was concerned that Searles's continued play would result in greater injury to his knee, and that he discussed Searles's medical problem with Coach Simonds. Searles also alleged that on more than one occasion he advised Simonds that his knees were bothering him, but Simonds "continued to play Plaintiff in games despite knowledge of Plaintiff's condition and general knee soreness as early as January, 1989." The record before the court contains sufficient evidence to raise an issue of material fact as to Simonds's breach of his duty to exercise reasonable care for the health and safety of Searles.

[¶ 8] To prevail on his negligence claim, Searles must prove that Simonds's breach of his duty to Searles "proximately caused an injury to the plaintiff." *Rowe v. Bennett*, 514 A.2d 802, 804 (Me.1986). Proximate cause is "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred." *Wing v. Morse*, 300 A.2d 491, 495 (Me.1973) (citation omitted). Proximate cause is a question of fact for the jury. *Klingerman v. SOL Corp. of Maine*, 505 A.2d 474, 478 (Me.1986).

[¶ 9] Searles presented medical testimony from Dr. John Herzog that his condition was likely due to "history overuse" and that "the more you play, the longer it's going to hurt and you may have a chronic

problem develop."[2] Searles presented evidence that Simonds was aware of his knee injury and continued to play him in games. Searles further alleges that Simonds was so intent on keeping Searles in games that he allowed him to skip basketball practices to preserve his knees for games. Searles himself testified as to the painful injuries he suffered playing basketball. The medical testimony and Searles's own account of his condition create a genuine issue of material fact as to whether he suffered permanent injury as a result of playing basketball at St. Joseph's.

· The Negligence Claim against Wheeler

[¶ 10] The court concluded that Searles had presented "no evidence of a standard of care required of athletic trainers." As an athletic trainer, Wheeler has the duty to conform to the standard of care required of an ordinary careful trainer. *Williams v. Inverness Corp.*, 664 A.2d 1244, 1246 (Me. 1995). Athletic trainers are licensed by the State, 32 M.R.S.A. §§ 14351–14362 (Supp. 1996)[3], and establishing the standard of care for these licensed professionals in their treatment of athletes ordinarily requires expert testimony. *Forbes v. Osteopathic Hosp. of Maine, Inc.*, 552 A.2d 16, 17 (Me.1988) ("ordinarily, a plaintiff can discharge his burden of proof for a claim of negligent medical care

only by expert medical testimony establishing the appropriate standard of medical care ...."). *See also Seven Tree Manor, Inc. v. Kallberg*, 1997 ME 10, ¶ 7, 688 A.2d 916 (professional engineer); *Jim Mitchell and Jed Davis, P.A., v. Jackson*, 627 A.2d 1014, 1017 (Me.1993) (attorneys). We have long recognized that expert testimony may not be necessary "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge...." *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954). Unlike the standard of reasonable care for the health and safety of student athletes applicable to a basketball coach, which can be ascertained by a lay jury, the standard of care applicable to an athletic trainer who treats physical injuries or who must make judgments about the severity of a physical condition does not ordinarily lend itself to common knowledge. *See, e.g., Gillespie v. Southern Utah State College*, 669 P.2d 861, 864 (Utah 1983).

[¶ 11] The gravamen of Searles's allegations against Wheeler, set forth in Counts VI and VII of his complaint, involves more than a claim that Wheeler negligently conducted a course of treatment of Searles's injuries that contributed to a worsening of his condition, or that he failed to appreciate

2. Searles also presented a letter from Dr. Philip Anson, who summarized the office records of Searles's visits to two different doctors at Anson's practice group, Orthopaedic Associates of Portland. The defendants contend that Searles could not use the doctor's letter in his opposition to their motion for a summary judgment because the letter was inadmissible hearsay. We agree.

Evidence set forth in an affidavit in opposition to a motion for a summary judgment must be admissible evidence. *Steeves v. Irwin*, 233 A.2d 126, 129 (Me.1967). Although medical records kept by hospitals and other medical facilities licensed pursuant to the laws of Maine are admissible as an exception to the hearsay rule, *see* 16 M.R.S.A. § 357 (Supp.1996); *State v. Francis*, 610 A.2d 743, 745 (Me.1992), the letter from Dr. Anson is a summary of his files prepared specifically for the plaintiff and would not fall within that hearsay exception. In addition, since the letter was prepared specifically for this litigation, it would not fall within the business records exception. M.R.Evid. 803(6).

3. See, e.g., 32 M.R.S.A. § 14354 (Supp.1996):

1. Athletic training. When providing athletic training to an athlete without referral from a doctor of medicine, osteopathy, podiatry, or dentistry, the athletic trainer is subject to the following requirements:

A. An athletic trainer may not make a medical diagnosis. The athletic trainer shall refer to a licensed doctor of medicine, osteopathy, podiatry or dentistry an athlete whose physical condition, either at the initial evaluation or during subsequent treatment, the athletic trainer determines to be beyond the scope of the practice of the athletic trainer.

B. If there is no improvement in an athlete who has sustained an athletic injury within 15 days of initiation of treatment, the athletic trainer shall refer the athlete to a licensed doctor of medicine, osteopathy, podiatry or dentistry or a licensed physical therapist.

C. If an athletic injury requires treatment for more than 45 days, the athletic trainer shall consult with, or refer the athlete to, a licensed doctor of medicine, surgery, osteopathy, podiatry or dentistry, or a licensed physical therapist. The athletic trainer shall document the action taken.

the seriousness of Searles's condition. Searles claims that Wheeler "failed to advise Coach Simonds that Paul Searles should not be playing basketball and the condition of Paul Searles's knees was such that continued play before complete healing will likely cause permanent injury." The deposition of Wheeler demonstrates an awareness of the acuteness of Searles's knee problems. Simonds states in his deposition that he was never advised by Wheeler that Searles could be permanently impaired by continued play, and he does not recall the trainer suggesting that Searles should not play. He also asserts that the trainer decided whether an injured player could play basketball, not the coach. To the extent that Searles's claim of negligence against Wheeler involves a failure by Wheeler to communicate to Simonds the nature and extent of Searles's knee problems, or a failure by Wheeler to advise Searles that he should not play basketball in light of Wheeler's knowledge of Searles's medical condition, Searles did not have to provide expert testimony about the standard of care applicable to an athletic trainer.[4] Jurors could apply their common knowledge in determining whether such failures, if they occurred, constituted a breach by Wheeler of his duty to exercise reasonable care for the health and safety of Searles.[5]

### Contract for payment of medical expenses

[¶ 12] In Count I of his complaint, Searles alleged that St. Joseph's, through Simonds and Wheeler, orally agreed to pay for the medical costs associated with his basketball injuries. He summarizes his contract claim as follows: "Paul Searles alleged that he entered into a contract with St. Joseph's [C]ollege, through its agents, under which the college promised to pay Paul's medical bills if he continued to play for the basketball team." Searles asserted in his response to

an interrogatory that "Coach Simonds told my parents and me that the School's insurance would pay for all of the medical bills relating to my knee problems. He said that to us on January 27, 1990, after a game against the University of Maine at Farmington, in Farmington, Maine."[6] Searles's mother testified in her deposition that Simonds told her husband after a basketball game that the school would "get him fixed-we'll take him to the doctor's and will have him-have his knees fixed up."

[¶ 13] "To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me.1996). The record does not contain evidence of the existence of a contract. Assuming as we must that Simonds did state to Searles's parents that the school would pay Searles's medical bills, such a statement is insufficient to constitute an offer to enter into a contract.

> In order to be legally operative and to create a power of acceptance, it is necessary that the offer shall contain all the terms of the contract to be made. It is not enough for one party to promise to do something. This party must also say what the other party must do in exchange.

1 Arthur Corbin, Corbin on Contracts § 1.11 (1993). For a contract to be enforceable, "the parties thereto must have a distinct and common intention which is communicated by each party to the other." 17A Am.Jur.2d Contracts § 27 (1991). There is no evidence as to the terms of the "offer" purportedly made by Simonds and no evidence that

---

**4.** We express no opinion on whether the court at trial should permit expert testimony in support of any portion of Searles's claim against Wheeler that requires expert testimony. That issue is for the court to decide in its management of the case.

**5.** In deciding that a summary judgment was improperly granted on the negligence counts of Searles's complaint, we do not address the mer-

its of Searles's contentions. Nor are we asked to decide whether Searles was himself responsible for his own injuries. It is for a jury to determine what responsibility, if any, Searles bears for the injuries he suffered while playing basketball.

**6.** Searles contradicted this assertion in his deposition, stating that he was not present when Simonds made the alleged statement to his parents.

Searles and Simonds had an agreement that Searles had to continue to play basketball in exchange for the payment of his medical expenses. Simonds's comment to Searles's parents cannot be construed as anything more than a statement of intent given as reassurance, and "an intention to do an act is not an offer to do it ... a mere expression of intention or general willingness to do something ... does not amount to an offer." 17 A Am.Jur.2d Contracts § 43(1991). The court properly entered a judgment in favor of St. Joseph's on the contract claim. *Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me. 1992).

The entry is:

> Judgment for defendants on Counts I, III and IV of plaintiff's amended complaint affirmed. Judgment for defendants on Counts II, V, VI and VII vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

