STATE OF MAINE

KENNEBEC, ss.

PRISCILLA REID,

Plaintiff

v.

CLAYTON REID, et al.,

Defendant

SUPERIRO C OURT
CIVIL ACTION
DOCKET NO. CV-04-148

DHM-KEN-2 17/06

DECISION AND ORDER
ON DEFENDANT WASTE
MANAGEMENT OF MAINE'S
MOTION FOR SUMMARY
JUDGMENT

This matter is before the court on defendant Waste Management of Maine's motion for summary judgment. By her complaint, plaintiff Priscilla Reid, individually, and as personal representative of the estate of James C. Reid, alleges the death of her husband was the result of negligence on the part of defendants Clayton Reid, Waste Management of Maine, Inc. and the Town of Mount Vernon.

James Reid ("James"), now deceased, was the brother of Defendant Clayton Reid ("Clayton" or "Defendant Reid"). Plaintiff Priscilla Reid ("Priscilla" or "the Plaintiff") is the sister-in-law of Clayton and the widow of James. On July 12, 2003, James traveled to the Mt. Vernon transfer station, located in the Town of Mt. Vernon ("the Town"), as a passenger in a pickup truck operated by Clayton. Upon arrival at the transfer station, James exited the vehicle to ask the attendant how to dispose of a television set that they had brought with them. After learning the location of the proper repository, James proceeded to remove orange pylons from the front of the identified dumpster, and then motioned to his brother to back his vehicle into position for unloading. As Clayton maneuvered backward, he received guidance from his brother, who was standing outside on the passenger side of the truck, and whom he viewed through the side-view

mirror. At that time, however, Defendant Reid's view through the rear window and rearview mirror was obscured by the television, which sat in the bed of the truck. When James motioned for his brother to stop the truck, he did so, turned off the engine, and began to get out. As he was stepping out of the truck, Clayton heard two thumps coming from the rear, which he believed to be the tailgate dropping down and James falling into the dumpster. When Defendant Reid approached the rear of his truck, he saw that the tailgate, which had been up when he began backing up, was now down, and his brother was lying at the bottom of the dumpster. James' fall into the dumpster caused him to strike his head, killing him.

The dumpster into which James fell was owned by Defendant Waste Management of Maine ("Waste Management") and rented to the Town pursuant to the terms of a Solid Waste Disposal and Hauling Agreement ("the Agreement"). The dumpster itself was situated such that its top lip protruded only about a foot to a foot and a half above the ground upon which persons depositing trash would stand. Prior to the accident, a set of chains had been erected in front of the dumpster to prevent people from falling into it. On the date of the accident, however, these chains were no longer in place, and the Town did not employ any other device that would prevent people from falling into the dumpster.

The Plaintiff filed her complaint on July 1, 2004 in her individual capacity and as the personal representative on behalf of the estate of James Reid. In her complaint, Priscilla alleges that Clayton, Waste Management, and the Town were negligent and proximately caused the death of her husband, for which she seeks damages in accordance with the Maine Wrongful Death Statute, 18-A M.R.S.A. § 2-804.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. The party opposing summary judgment will be given the benefit of any reasonable inferences that can be drawn from the presented facts. *See Perkins v. Blake*, 2004 ME 86, ¶ 7, 853 A.2d 752, 755. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial". *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

In its motion, Waste Management first argues that it owed no duty to the Plaintiff with regard to the placement of the dumpster, or the selection, inspection, installation and maintenance of safety devices around the dumpster. To the contrary, the Defendant asserts that these considerations were the sole responsibility of the Town.

Waste Management also contends that its only responsibilities with respect to the dumpsters used at the transfer station were to rent them to the Town, to transport them to and from the station, and to dispose of the deposited waste. In support of these assertions, the Defendant suggests that the Agreement it entered into with the Town fixes the parties' duties as just described.

Even assuming that it did owe James a duty, Waste Management further asserts that the Plaintiff cannot possibly prove a breach. As grounds for this argument, the Defendant contends that for the Plaintiff to succeed at trial, she will have to prove that the placement of and failure to install safety devices around the dumpster amounts to a breach of the industry standard of care. In the Defendant's view, proof of industry standards will require expert testimony. In particular, Waste Management points out that expert testimony is required where the subject presented is beyond the scope of knowledge of the average layperson. *See Lemay v. Burnett*, 660 A.2d 1116, 1117 (N.H. 1995). Since the Plaintiff failed to disclose an expert to testify on this subject prior to the deadline for doing so, Waste Management asserts that Priscilla is precluded from offering expert testimony on this issue at trial.

In opposition, the Plaintiff asserts that Waste Management did in fact owe James a duty to reasonably and safely locate the dumpster and to make sure that appropriate safety measures were in place. Priscilla notes that the Defendant regularly picked up, transported, and dropped off dumpsters at the Mt. Vernon site. Moreover, the Plaintiff asserts that Waste Management knew exactly where the dumpster was located, and was aware, or should have been aware, that no safety devices were in place to prevent someone from falling as James did. Also, contrary to the Defendant's suggestion, Priscilla asserts that Waste Management was in fact responsible under the Agreement for the details of the work to be performed. In addition, the Plaintiff suggests that

because Waste Management is in the business of trash hauling and disposal, it has expertise in the field. Under these circumstances, the Plaintiff contends that James' death was reasonably foreseeable, and was directly caused by the negligence of Waste Management and the other Defendants. Priscilla also maintains that in allowing the Town to continually use the bins in their dangerous condition, Waste Management should also be found liable on a negligent entrustment theory.

Furthermore, the Plaintiff criticizes the Defendant's suggestion that expert testimony will be necessary to prove her case. Priscilla points out that in *Lemay*, cited to by the Defendant, the plaintiff sued the owner of a pool after he dove from the diving board and hit his head on the bottom. The New Hampshire Supreme Court stated in its opinion that laypersons generally do not know when water becomes too shallow for diving, given a set of particular diving conditions. *See Lemay*, 660 A.2d at 1118. However, Priscilla draws our attention to the further statement in *Lemay*, indicating that "had [the water] been three feet deep, a jury could have readily determined the question of reasonable care unaided by expert testimony. The same would have been true of a pool fifty feet deep." *Id*. The Plaintiff explains that she is not arguing that the dumpster should have been 36 inches above the ground as opposed to 30, but rather, that the mere existence of an unprotected hole in the ground is negligent. Therefore, a jury will not be required to engage in the technical weighing and evaluation of particular measures that might have been utilized. Put another way, she implies that this situation is similar to the pool containing only three feet of water, and is thus distinct from *Lemay*.

In reply, the Defendant again claims that, pursuant to the Agreement, it was under no obligation to ensure the safety of the transfer station. Indeed the Agreement does not explicitly say what services are to be provided by Waste Management, but

such services can be inferred from paragraph 3, Compensation. Under that paragraph, Waste Management is to be paid for hauling waste and delivering "special waste cans," disposing of different types of waste, and renting three "roll-off containers" to the Town. There is no mention in the Agreement of Waste Management's being under any obligation to ensure that the transfer station was operated in a safe manner.

As for the plaintiff's asserting that Waste Management owed a common law duty to James, Waste Management contends that absent a special relationship between the defendant and victim, the defendant owes no duty to protect the victim from harm unless the defendant created that harm. *See Mastriano v. Blyer*, 2001 ME 134, ¶ 17, 775 A.2d 951, 955 (Me. 2001)). As Waste Management continues to assert that it played no part in creating the harm, and had no special relationship to the decedent, it cannot be held to have acted negligently.

As for the plaintiff's contention that Waste Management also has liability under a negligent entrustment theory, Waste Management points out that this argument was not raised in the complaint, and thus the plaintiff should be barred from making it at this stage of the pleadings. *Pelletier v. Mellon Bank, N.A.*, 485 A.2d 1002,1005 n. 5 (Me. 1985). Were the court to consider the argument nonetheless, the plaintiff would have to demonstrate that Waste Management had the right to control the waste bins that it had entrusted to the Town. *See Barnes v. Lee*, 2003 Me. Super. LEXIS 38, *18. Though the plaintiff cites *Barnes* in an effort to support her theory, nothing in the facts gives credence to the notion that Waste Management had any relationship with (or control over) the waste containers when they were at the transfer station.

In sum, the plaintiff has not demonstrated that there are factual issues in dispute with regard to Waste Management's involvement in this case. The plaintiff wishes the court to find, as a matter of law, that Waste Management owed a duty of care to the

decedent regarding the safe deposit of refuse into the containers it supplied to the Town. Because there are no disputed material facts, and as a matter of law, Waste Management did not owe a duty of care to the decedent, Waste Management's motion for summary judgment should be granted.

The entry will be:

> Defendant Waste Management of Maine's motion for summary judgment is GRANTED; judgment for defendant Waste Management of Maine on plaintiff's complaint.

Dated: February 12, 2006

Donald H. Marden
Justice, Superior Court

STATE OF MAINE

KENNEBEC, ss.

PRISCILLA REID,

        Plaintiff

    v.

CLAYTON REID, *et al.*,

        Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-148

DHM- K41 r 2

**DECISION AND ORDER
ON DEFENDANT CLAYTON
REID'S MOTION FOR
SUMMARY JUDGMENT**

This matter is before the court on defendant Clayton Reid's motion for summary judgment. By her complaint, plaintiff Priscilla Reid, individually, and as personal representative of the estate of James C. Reid, alleges the death of her husband was the result of negligence on the part of defendants Clayton Reid, Waste Management of Maine, Inc. and the Town of Mount Vernon.

James Reid ("James"), now deceased, was the brother of Defendant Clayton Reid ("Clayton" or "Defendant Reid"). Plaintiff Priscilla Reid ("Priscilla" or "the Plaintiff") is the sister-in-law of Clayton and the widow of James. On July 12, 2003, James traveled to the Mt. Vernon transfer station, located in the Town of Mt. Vernon ("the Town"), as a passenger in a pickup truck operated by Clayton. Upon arrival at the transfer station, James exited the vehicle to ask the attendant how to dispose of a television set that they had brought with them. After learning the location of the proper repository, James proceeded to remove orange pylons from the front of the identified dumpster, and then motioned to his brother to back his vehicle into position for unloading. As Clayton maneuvered backward, he received guidance from his brother, who was standing outside on the passenger side of the truck, and whom he viewed through the side-view

mirror. At that time, however, Defendant Reid's view through the rear window and rearview mirror was obscured by the television, which sat in the bed of the truck. When James motioned for his brother to stop the truck, he did so, turned off the engine, and began to get out. As he was stepping out of the truck, Clayton heard two thumps coming from the rear, which he believed to be the tailgate dropping down and James falling into the dumpster. When Defendant Reid approached the rear of his truck, he saw that the tailgate, which had been up when he began backing up, was now down, and his brother was lying at the bottom of the dumpster. James' fall into the dumpster caused him to strike his head, killing him.

The dumpster into which James fell was owned by Defendant Waste Management of Maine ("Waste Management") and rented to the Town pursuant to the terms of a Solid Waste Disposal and Hauling Agreement ("the Agreement"). The dumpster itself was situated such that its top lip protruded only about a foot to a foot and a half above the ground upon which persons depositing trash would stand. Prior to the accident, a set of chains had been erected in front of the dumpster to prevent people from falling into it. On the date of the accident, however, these chains were no longer in place, and the Town did not employ any other device that would prevent people from falling into the dumpster.

The Plaintiff filed her complaint on July 1, 2004 in her individual capacity and as the personal representative on behalf of the estate of James Reid. In her complaint, Priscilla alleges that Clayton, Waste Management, and the Town were negligent and proximately caused the death of her husband, for which she seeks damages in accordance with the Maine Wrongful Death Statute, 18-A M.R.S.A. § 2-804.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. The party opposing summary judgment will be given the benefit of any reasonable inferences that can be drawn from the presented facts. *See Perkins v. Blake*, 2004 ME 86, ¶ 7, 853 A.2d 752, 755. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial". *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

In his brief, Clayton asserts that Priscilla cannot meet her burden of production as to any of the elements of negligence, and therefore, summary judgment must be entered against her. First, Clayton notes that whether one party owes a duty of care to another is a matter of law. *See Fish v. Paul*, 574 A.2d 1365, 1366 (Me. 1990). Defendant

Reid contends that he owed James no duty to prevent him from falling into the dumpster. Clayton asserts that he is not responsible for the condition of the transfer station, and the mere fact that James accompanied him there as a passenger in his truck is insufficient to establish a duty to ensure James' safety. Even if the Court should somehow conclude that this duty exists, however, Defendant Reid suggests that there is no evidence showing that it was breached. According to Clayton, the only evidence available indicates that James was outside of the truck, that Clayton backed up and parked at his brother's direction, that the tailgate was up when the engine was turned off, that Clayton heard two thumps as he was exiting his vehicle, and that he saw the tailgate down and James at the bottom of the dumpster when he approached the rear of the truck. On these facts, Defendant Reid believes that no reasonable jury could conclude that Clayton had any involvement in the accident whatsoever.

In addition, Clayton recognizes that the existence of proximate cause is generally a jury question. *See Webb v. Haas*, 1999 ME 74, ¶ 20, 728 A.2d 1261, 1267. However, he further asserts that it is improper to submit a case to the jury that is based purely upon speculation and conjecture. *See id.* In Clayton's view, the case against him is based upon the mere fact that the accident happened near his truck. Defendant Reid believes that the Court cannot permit this type of baseless assertion to be presented to a jury.

In opposition, the Plaintiff contends that Clayton did indeed owe a duty to her husband, particularly, the duty to operate and park his truck in a safe and reasonable manner. Priscilla suggests that the law of Maine has long recognized that automobile owners owe a duty to their passengers to safely operate their vehicle. *See Nadeau v. Fogg*, 70 A.2d 730 (Me. 1950); *Mastriano v. Blyer*, 2001 ME 134, 779 A.2d 951. Additionally, she states that a driver owes a duty to properly and safely park their automobile for the benefit of others. *See Tenney v. Taylor*, 392 A.2d 1092 (Me. 1978).

Thus, even though the accident happened after the vehicle's ignition had been turned off, Priscilla suggests that Defendant Reid is not relieved of his duty of care.

The Plaintiff also maintains that there is ample evidence of record in support of her assertion that Defendant Reid breached his duty of care. In particular, she believes her statement of disputed material facts displays that Clayton (1) parked so close to the dumpster; (2) intending to and in fact getting so close to the bin as to leave no room for James to maneuver behind his vehicle; (3) using only his passenger's side-view mirror; (4) despite knowing that there were no safety devices in place to prevent persons from falling in. In sum, she contends that these facts show a lack of due care on Clayton's part in backing and parking his truck. The Plaintiff also criticizes Defendant Reid's suggestion that because no one actually saw the truck hit James, or James' fall into the dumpster, that no duty was breached. In Priscilla's opinion, the issue is not whether someone witnessed James fall into the dumpster, or whether the truck actually struck James, but rather, whether Clayton operated and parked his vehicle negligently. The Plaintiff maintains that there are sufficient disputed material facts in this regard for consideration by a jury.

Priscilla also argues that Defendant Reid's conduct proximately caused her husband's fall. She notes that an act is the proximate cause of an injury if the actor's conduct is a substantial factor in bringing about the harm. *See Webb*, 1999 ME 74, ¶ 20, 728 A.2d at 1267 (citations omitted). As recited above, the Plaintiff again highlights assertions made in her statement of disputed material facts that she believes show that Clayton's imprudent backing and parking of his truck too close to the dumpster directly resulted in James' death. Moreover, she states that there is nothing speculative about any of these assertions.

In reply, Defendant Reid again attacks the Plaintiff's position, reiterating that it is without sufficient factual support to create a jury issue. Also, Clayton suggests that the various cases cited by the Plaintiff to support her argument are inapposite. First, Clayton attempts to distinguish *Nadeau*, explaining that in that case the injuries complained of occurred when the defendant was actually driving a motor vehicle, unlike the present case. Also, Defendant Reid notes that *Mastriano* dealt with a duty owed to a passenger by a common carrier, which is not the case here. Moreover, the Law Court in *Mastriano* found that even where the more burdensome duty owed to a passenger by a common carrier is involved, there is no continuing obligation to ensure the passenger's safety once they have been given safe exit from the carrier's vehicle. Also, Clayton asserts that *Tenney* is distinct because that case involved a vehicle parked in a designated no parking zone, whereas here, the vehicle in question was not only parked legally, but was also in a place specifically intended for the unloading of trash.

The Law Court has described a "duty" as "an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another". *See Mastriano*, 2001 ME 134, ¶ 12, 779 A.2d at 954 (citations omitted). In addition, the Law Court has explained that the concept of "duty" requires us to, *inter alia*, "conduct ourselves or our business in ways that do not cause injuries to others." *See id.* While the existence of duty will depend in large part on whether the harm suffered was a foreseeable result of particular conduct, matters of policy will also inform the analysis. *See Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992).

There is no evidence that James' fall into the dumpster was a foreseeable consequence of Clayton's conduct. Nor are there facts from which the court could reasonably infer such a foreseeability even considering the evidence in a light most favorable to the plaintiff. Defendant positioned his vehicle by stopping at exactly the

point that his brother caused by his signal. There is no evidence submitted that Clayton either directed James to position himself behind the vehicle or that Clayton was aware that James would attempt to place himself behind the vehicle in a position likely to cause a fall. While defendant was aware that there were no devices, as there once had been, that might have helped prevent someone from getting too close to the dumpster and falling in, there is no evidence of any duty of Clayton to James to see that which was obvious to be seen. Defendant's duty to the decedent as his passenger ceased upon his delivery in a safe manner to a safe place. There is no evidence that the point of debarkation by James from the pickup truck was an unsafe place. Defendant had no heightened duty to James as his passenger by virtue of a position as a driver for hire or a common carrier. Finally, there is no evidence that parking of the vehicle was in a place designated to be a no parking zone based upon the creation of danger to others.

While the plaintiff argues that foreseeability of the injuries suffered under the attendant circumstances is a paramount concern, *see Pepin*, 610 A.2d at 281, there is no evidence that any act by defendant Clayton Reid was a "substantial factor" in bringing about the injury to James. *See Webb*, 1999 ME 74, ¶ 20, 728 A.2d at 1267.

Plaintiff asserts that defendant Reid backed up to the trash bin despite knowing there were no safety rails or cement bars to prevent the truck (or people) from backing too close or even into the trash bin. The statements of fact are unrebutted that Clayton caused his vehicle to back up at the direction of the decedent and stopped at the signal of the decedent. Furthermore, the vehicle was stopped before any activity on the part of James took place. Plaintiff further asserts that the defendant had regularly backed his truck up to the trash bins at the transfer station so close that there was no room to walk behind the truck when the tailgate of the truck bed was let down. Inasmuch as the defendant's placement of the truck was based upon the discretion of the decedent, he is

absolved of that duty. Furthermore, since both the decedent and the defendant were aware that the object in the rear of the pickup truck prevented the use of the interior rearview mirror and the decedent was on the passenger side of the vehicle precluding the use of the driver's side exterior mirror, the decedent was well aware of his control.

For all the foregoing reasons, the entry will be:

Defendant Clayton Reid's motion for summary judgment is GRANTED; judgment for defendant Clayton Reed on plaintiff's complaint.

Dated: February 17, 2006

Donald H. Marden
Justice, Superior Court

STATE OF MAINE                          SUPERIRO C OURT
                                        CIVIL ACTION
KENNEBEC, ss.                           DOCKET NO. CV-04-148

                                        DHM-KEII-2 71Le

PRISCILLA REID,

            Plaintiff

      v.                                **DECISION AND ORDER**
                                        **ON DEFENDANT TOWN OF**
CLAYTON REID, *et al.,*                  **MOUNT VERNON'S MOTION**
                                        **FOR SUMMARY JUDGMENT**
            Defendant


      This matter is before the court on defendant Town of Mount Vernon's motion for

summary judgment. By her complaint, plaintiff Priscilla Reid, individually, and as

personal representative of the estate of James C. Reid, alleges the death of her husband

was the result of negligence on the part of defendants Clayton Reid, Waste

Management of Maine, Inc. and the Town of Mount Vernon.

      James Reid ("James"), now deceased, was the brother of Defendant Clayton Reid

("Clayton" or "Defendant Reid"). Plaintiff Priscilla Reid ("Priscilla" or "the Plaintiff")

is the sister-in-law of Clayton and the widow of James. On July 12, 2003, James traveled

to the Mt. Vernon transfer station, located in the Town of Mt. Vernon ("the Town"), as a

passenger in a pickup truck operated by Clayton. Upon arrival at the transfer station,

James exited the vehicle to ask the attendant how to dispose of a television set that they

had brought with them. After learning the location of the proper repository, James

proceeded to remove orange pylons from the front of the identified dumpster, and then

motioned to his brother to back his vehicle into position for unloading. As Clayton

maneuvered backward, he received guidance from his brother, who was standing

outside on the passenger side of the truck, and whom he viewed through the side-view

mirror. At that time, however, Defendant Reid's view through the rear window and rearview mirror was obscured by the television, which sat in the bed of the truck. When James motioned for his brother to stop the truck, he did so, turned off the engine, and began to get out. As he was stepping out of the truck, Clayton heard two thumps coming from the rear, which he believed to be the tailgate dropping down and James falling into the dumpster. When Defendant Reid approached the rear of his truck, he saw that the tailgate, which had been up when he began backing up, was now down, and his brother was lying at the bottom of the dumpster. James' fall into the dumpster caused him to strike his head, killing him.

The dumpster into which James fell was owned by Defendant Waste Management of Maine ("Waste Management") and rented to the Town pursuant to the terms of a Solid Waste Disposal and Hauling Agreement ("the Agreement"). The dumpster itself was situated such that its top lip protruded only about a foot to a foot and a half above the ground upon which persons depositing trash would stand. Prior to the accident, a set of chains had been erected in front of the dumpster to prevent people from falling into it. On the date of the accident, however, these chains were no longer in place, and the Town did not employ any other device that would prevent people from falling into the dumpster.

The Plaintiff filed her complaint on July 1, 2004 in her individual capacity and as the personal representative on behalf of the estate of James Reid. In her complaint, Priscilla alleges that Clayton, Waste Management, and the Town were negligent and proximately caused the death of her husband, for which she seeks damages in accordance with the Maine Wrongful Death Statute, 18-A M.R.S.A. § 2-804.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter,* 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark,* 2001 ME 49, ¶ 4, 767 A.2d 303, 305. The party opposing summary judgment will be given the benefit of any reasonable inferences that can be drawn from the presented facts. *See Perkins v. Blake,* 2004 ME 86, ¶ 7, 853 A.2d 752, 755. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial". *Searles v. Trustees of St. Joseph's College,* 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka,* 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner,* 658 A.2d 1074, 1076 (Me. 1995).

The Town's main argument in support of its motion for summary judgment is that it enjoys governmental immunity under the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. § 8104-A(1)(G) (2005). This section of the MCTA holds a governmental entity liable for its negligent acts or omissions in its ownership, maintenance or use of

any "other machinery or equipment, whether mobile or stationary." 14 M.R.S.A. § 8104-A(1)(G). However, the Town outlines the relevant case law in its motion, stating that the Law Court has not deemed a free standing dumpster to pose the same type of risk as the vehicles outlined in the preceding section of the statute (special mobile equipment, trailers, aircraft, watercraft, and snowmobiles). 14 M.R.S.A. § 8104-A(1)(A-F); *Petillo v. City of Portland*, 657 A.2d 325, 327 (Me. 1995). Therefore, the Town would not be liable for any negligence associated with the use of the dumpster

In her reply motion, the plaintiff agrees with the Town's analysis of the case law, but argues that as a matter of public policy, the MTCA immunity should not apply to the Town in this case. The plaintiff points out that the relevant case establishing that a dumpster is not an appurtenance to a public building (another instance whereby governmental immunity would not apply) involved a minor injury to a person who failed to receive assistance while emptying a piece of wood into a trash bin. *See Sanford v. Town of Shapleigh*, 2004 ME 73, ¶1, 850 A.2d 325, 327. In *Sanford*, the Law Court used a strict, statutory interpretation approach to decide that "appurtenance" had a technical meaning that meant the Town should be accorded governmental immunity from harm occurring at the site of the appurtenance. *See Sanford*, 2004 ME 73, ¶¶ 11-12, 850 A.2d at 329. The plaintiff urges that such a strict approach would be unjust in this case where a death was involved, and where the Town was repeatedly warned, in public meetings, of the dangerous condition at the transfer station.

While plaintiff's argument regarding public policy and the MTCA appeals to a more vague sense of justice, she also attempts to make a more technical argument, based on the indemnity language in the Agreement between the Town and Waste Management. Plaintiff asserts that the Town waived its governmental immunity when it agreed to hold the Contractor, in this case Waste Management, not liable for any

negligent acts or omissions on the part of the Town or its employees relating to the performance of the contract. Though the plaintiff concedes that indemnification provisions and their relationship to the MTCA have not been directly addressed by case law, she does cite a Maine case where a waiver of statutory immunity was held valid in the Worker's Compensation context. *Diamond International Corp. v. Sullivan and Merritt, Inc.*, 493 A.2d 1043, 1048 (Me. 1985).

The Town dispenses with the plaintiff's argument regarding the indemnification contract clause. First, the Town points out that *Diamond International* involved an indemnification provision in a purchase order aimed at employer immunity under the Worker's Compensation scheme, and not a waiver of governmental immunity under the MTCA. Second, the indemnification clause in *Diamond International* applied to employers assuming liability for actions brought against them by their own employees. In this case, neither the plaintiff nor the decedent were employees of the Town, so again, relying on *Diamond International* is inapposite. Finally, the Town argues that since the MTCA protects the Town from a negligence suit in this case, the indemnification clause does not pertain, as a finding of negligence is needed to trigger its application.

The court construes the indemnification strictly as a contractual matter for the protection of Waste Management and not a waiver of immunity.

The negligence alleged in the instant case does not arise from the operation or the location of the dumpster. It arises from the construction of earthen pits adjacent to gravel driveways into which the dumpsters are located. The negligence is the lack of maintenance of reasonable devices to prevent persons and vehicles from falling into the pits containing the dumpsters. The driveways and pits are designed and maintained

specifically for the purpose of facilitating the public in moving trash from the rear of vehicles into a dumpster without lifting above the height of the side of the dumpster.

In *Adriance v. Standish, 687 A.2d 238, (Me.1996)* a citizen fell into a transfer station hopper when a safety gate was allegedly negligently left open. The court found a public building from the facts that it was a permanent, fully enclosed and completely open to the public structure and an exception to immunity under the Tort Claims Act. In this case, a citizen fell into a transfer station hopper, (dumpster), at a permanent, unenclosed and completely open to the public facility. "A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building." 14 M.R.S.A. §8104-A(2).

Webster's New Riverside University Dictionary, 1988, defines a "building" as a structure that is built. "Structure" is defined as something made up of a number of parts held or put together in a specific way. Can this court construe the movement of earth to create ramps to a pit containing a dumpster as made up of parts put together in a specific way?

In spite of a conceivably absurd result, the court must construe exceptions to immunity strictly so as to adhere to immunity as the general rule. *Sanford v. Shapleigh, 2004 Me 73, 850 A.2d 325.* If "appurtenance" is a technical term, *Sanford* at 328, the court presumes "building" in the context of the Tort Claims Act is as well. As noted from photographs in deposition exhibits, there do not appear to be any buildings on the transfer station site.

The public policy argument is well presented and well founded. The result of the court's analysis is clearly contrary to public policy but to cause public policy to trump the strict construction of statutes and Law Court decisions would be judicial activism at its worst and a matter best left to the Legislature.

The entry will be:

Defendant Town of Mount Vernon's motion for summary judgment is GRANTED; judgment for defendant Town of Mount Vernon on plaintiff's complaint.

Dated:  February 17, 2006

Donald H. Marden
Justice, Superior Court

PRISCILLA REID (PR) - PLAINTIFF
121 DUNNS CORNER RD.
MOUNT VERNON ME 04352
Attorney for: PRISCILLA REID (PR)
SUMNER LIPMAN - RETAINED 07/01/2004
LIPMAN & KATZ & MCKEE, PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

Attorney for: PRISCILLA REID (PR)
KAREN E BOSTON - RETAINED 07/01/2004
LIPMAN & KATZ & MCKEE, PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051


vs
CLAYTON LEROY REID - DEFENDANT

Attorney for: CLAYTON LEROY REID
ELIZABETH GERMANI - RETAINED
GERMANI & RIGGLE, LLC
93 EXCHANGE ST
PORTLAND ME 04101

TOWN OF MOUNT VERNON - DEFENDANT
1997 NORTH RD,
MOUNT VERNON ME 04352
Attorney for: TOWN OF MOUNT VERNON
MARK FRANCO - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

WASTE MANAGEMENT OF MAINE - DEFENDANT
PETER WEBSTER, ONE PORTLAND SQUARE
PORTLAND ME 04101
Attorney for: WASTE MANAGEMENT OF MAINE
ELAINE M MICHAUD - RETAINED
DEVINE MILLIMET & BRANCH PA
111 AMHERST ST
MANCHESTER NH 03101

Attorney for: WASTE MANAGEMENT OF MAINE
BRITA J FORSSBERG - REMOVAL
WRIGHT & ASSOCIATES
615 CONGRESS STREET, SUITE 15
PO BOX 4077
PORTLAND ME 04101


SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2004-00148


**DOCKET RECORD**

Filing Document: COMPLAINT          Minor Case Type: OTHER NEGLIGENCE
Filing Date: 07/01/2004